FOR PUBLICATION

---

**DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN
APPELLATE DIVISION**

---

GLENFORD U. PRINCE, JR., )
 )
       Appellant ) D.C. Crim. App. No. 2005-37
 ) S.C. Crim. No. F25/2004
 )
v. )
 )
PEOPLE OF THE VIRGIN ISLANDS, )
 )
       Appellee. )
 )

On Appeal from the Superior Court of the Virgin Islands,
The Honorable Brenda Hollar, presiding

Considered: June 25, 2010
Decided: July 13, 2011

**BEFORE: CURTIS V. GÓMEZ**, Chief Judge of the District Court of the Virgin Islands; **RAYMOND L. FINCH**, Judge of the District Court of the Virgin Islands; and **PATRICIA D. STEELE**, Judge of the Superior Court of the Virgin Islands, Division of St. Croix, sitting by designation.

**Appearances:**

**Julie German Evert, Esq.**
St. Thomas, V.I.
    *Attorney for Appellant,*

**Maureen Phelan, Esq.**
St. Thomas, V.I.
    *Attorney for the Government.*

**MEMORANDUM OPINION**

**PER CURIAM,**

Appellant Glenford U. Prince, Jr.("Prince" or "Glenford Prince") appeals his convictions for second degree murder, third degree assault, and two counts of possessing a dangerous weapon during the commission of a crime of violence. For the reasons given below, the Court will affirm the judgment of the Superior Court.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Glenford Prince was arrested for the murder of his younger brother, Isaiah Pereira ("Pereira"). The People of the Virgin Islands charged Prince in an amended information with four counts. Count I charged Prince with second degree murder, in violation of V.I. CODE ANN. tit 14, §§ 921, 922(b). Counts II and IV charged possessing a dangerous weapon during the commission of a crime of violence, in violation of V.I. CODE ANN. tit. 14, §§ 2251(a)(2)(B), 921 and 922(b). Count III charged assault in the third degree, in violation of V.I. CODE ANN. tit. 14, § 297(2).

In February 2005, a trial was held in this matter (the "February 2005 trial"). During the Government's case-in-chief, it called Nonceba Prince ("Nonceba") as a witness and then later recalled Nonceba as a rebuttal witness. Nonceba was emphatic

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 3

about his displeasure at testifying at trial. He stated "the thing is, I don't want nothing to do with this . . . . I wish it didn't happen, God knows, but I can't involve myself like this." (Appellant's App. 45.) The Government thereafter requested that Nonceba be declared a hostile witness. The court granted that request and the Government led the witness. Nonceba indicated that his mother had made it clear that he would be ostracized from the family if he testified. Nonceba stated that he was close to Pereira, but not Prince.

Prince later took the stand and testified that Pereira attacked him and that he did not know how Pereira was stabbed. Prince also testified that he never stabbed Nonceba.

On rebuttal, Nonceba testified that Prince had stabbed him in the leg in July 2000 ("July 2000 stabbing"). Prince had previously been charged in connection with stabbing Nonceba, and a trial was held in July 2004 ("July 2004 trial"). At the July 2004 trial, Nonceba testified that he fell on a knife and was not stabbed by Prince. (*Id.* at 72.) At the conclusion of that trial, Prince was acquitted of all charges relating to the stabbing of Nonceba.

However, thereafter, Nonceba signed a statement averring that when he testified in the July 2004 trial, he lied on the stand. He indicated that his mother had told him that if he sent

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 4

Prince to jail he would not be allowed home. At the February 2005 trial, Nonceba testified that he had previously lied under oath about falling on a knife and that Prince had stabbed him in the leg while he was sleeping. (*Id.* at 62.) The trial court took judicial notice of Prince's acquittal in the 2004 trial but allowed Nonceba to testify as to his version of the events surrounding the July 2000 stabbing.

Prince was convicted of the second-degree murder of Pereira, the third-degree assault of Pereira, and two counts of possessing a dangerous weapon in the commission of a crime of violence. Prince was sentenced to 15 years for the second degree murder and ten years for possessing a dangerous weapon during a crime of violence, to be served consecutively. Prince was also ordered to pay a mandatory fine of $10,000.

Prince timely filed this appeal. Prince presents two arguments on appeal: (1) the trial court erred in allowing the rebuttal testimony of a witness where the probative value of the testimony was outweighed by its prejudice, and (2) the trial court abused its discretion in permitting the testimony of a witness who had previously perjured himself.

## II. JURISDICTION AND STANDARD OF REVIEW

The Appellate Panel has jurisdiction to review criminal judgments and orders of the Superior Court in cases in which the

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 5

defendant has been convicted, and has not entered a guilty plea. See V.I. ANN. CODE Tit.4, § 33 (2006); Revised Organic Act of 1984, 28 U.S.C. § 1613(a)(2006).

Generally, the admission of evidence and testimony is discretionary and is reviewed for abuse of discretion. *United States v. Furst*, 886 F.2d 558, 571 (3d Cir. 1989); *Rivera v. Gov't. of Virgin Islands*, 635 F. Supp. 795, 798 (D.V.I. 1986). Failure to object to the admission of certain evidence at trial is reviewed for plain error. *See United States v. Moore*, 375 F.3d 259, 262 (3d Cir. 2004)("Where, however, a party fails to object in a timely fashion or fails to make a specific objection, our review is for plain error only."). To establish plain error, the defendant must show the following: "(1) error, (2) that is plain, and (3) that affects substantial rights." *Id.* at 262. Once these conditions are met, the appellate court must determine whether "the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (citing *Johnson v. United States*, 520 U.S. 461, 467 (1997)). The appellant bears the burden of persuasion on proving error below, and "[i]n most cases," the substantial rights requirement "means that the error must have been prejudicial: [i]t must have affected the outcome of the district court proceedings." *United States v. Olano*, 507 U.S. 725, 734 (1993).

### III. ANALYSIS

Prince's main argument on appeal is that the trial court erred in admitting certain prior bad act testimony by Nonceba that was prejudicial to Prince. Specifically, Prince argues that the trial court erred in admitting Nonceba's testimony that Prince had previously stabbed him in the leg. Prince claims that Nonceba's testimony was improper under Fed. R. Evid. 404(b). The appendix does not show that Prince objected to the admission of that testimony at trial.[1]

At trial the Government argued that it was presenting Nonceba's testimony about Prince's prior stabbing "to rebut testimony of the defendant that he never stabbed his brother, that he doesn't know what his brother is talking about, and only one brother has ever been stabbed." (Appellant's App. at 35.)

Neither party provided the portions of the transcript associated with Prince's testimony. Notwithstanding that failure, the Court obtained the full trial transcript for its

---

[1] The only objection provided in the appendix was Prince's objection to the admission of two of the Government's exhibits during rebuttal. In response to that objection, the Government stated:

> Your Honor, this is rebuttal and it's 404(b) which is to rebut testimony of the defendant that he never stabbed his brother, that he doesn't know what his brother is talking about, and only one brother has ever been stabbed.

(Appellant's App. at 91.)

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 7

review.

During its case-in-chief, the Government called Prince's mother, Valerie Meyers ("Meyers"), to the stand during the late afternoon on the second day of trial. In the midst of cross-examination, the prosecutor asked Meyers about a statement that she gave to a Virgin Islands Police officer, Mario Stout, on January 28, 2004. When asked if Meyers recalled her response in that statement to a question about whether Glenford Prince ever stabbed any of his other brothers, Meyers said she did not recall. The prosecutor than read a portion of Meyers' statement in which she indicated that Glenford Prince had told her that he and Nonceba had been in a fight and that Glenford Prince had cut Nonceba on his foot. The prosecutor inquired whether Glenford Prince was charged in relation to that incident. Meyers responded in the affirmative. Thereafter, the prosecutor questioned Meyers about discussions she had with Nonceba about testifying in that matter:

> Q. You sat him down and you say this is what you're going to say when you got testify?
> A. I can't sit him down.
> Q. You said to him, you're going to go to court--
> A. I can't talk to him.
> Q. -- and you're going to say that you don't know how you got stabbed, right?
> A. No, I did not say that.

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 8

> Q. And you told him that he is going to say that he didn't see where the knife came from, correct?
>
> A. Oh, lord, I didn't say that. That I swear.
>
> Q. And you told him that he is going to say that there was a struggle between him and his brother but that he must have fallen on the knife, correct?
>
> A. No, I don't indulge my children into wrong. I always tell them tell the truth.
>
> Q. And that's the same story that Glenford is using today, isn't it?
>
> A. I don't know what he using.

(Trial Tr. at 349, Feb. 15, 2005.)

The following morning, the court instructed the jurors in the following manner about Meyers' testimony:

> As you may recall, Ms. Valerie Meyers, the mother of the defendant, testified yesterday evening during cross-examination by the prosecution that the defendant may have stabbed his older brother Nonceba Prince at a time before the stabbing death of Isaiah Pereira on January 1st, 2004.
>
> I therefore instruct you that the evidence of any other crime, wrong, bad act, if you do so find, is not admissible to prove the character of the person in order to action in conformity with what the defendant is being charged with.
>
> However, such evidence of wrong or bad acts may be admissible for other purposes such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident. I therefore instruct you that any evidence introduced regarding any prior stabbing was being offered for the limited purpose of establishing intent, identity or absence of mistake or accident. All right.

(Trial Tr. at 7-8, Feb. 16, 2005.)

Case: 3:05-cr-00037-CRA   Document #: 46   Filed: 07/13/11   Page 9 of 19

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 9

During his case, Prince elected to take the stand in his defense. He testified that his brother, Pereira, became upset because he thought Prince used Pereira's cell phone. Thereafter, the men began to have a physical confrontation. Prince testified that he was able to restrain Pereira during that struggle, and Pereira left their house for a short time. Pereira returned home approximately 10 minutes later and began pounding the door. Prince, armed with a BB gun, opened the door slowly. Prince testified that Pereira lunged forward, bombarding Prince with punches. Prince stated that he lost the BB gun in the midst of the ensuing fight.

Prince testified that he was knocked to the ground, and as he rose from the ground, he noticed that Pereira was approaching him with a knife in his hand. Prince stated that he tried to wrest the knife from Pereira's grasp, but was unsuccessful. The men continued to struggle for some time, and Prince testified that the knife fell to the ground:

> THE WITNESS: . . . That's when I started clutching on he hand, and he try to chuck back, and he just start to wild out with the hand, you know what I mean?
> And the knife finally fell onto the ground, and when he fell to the ground, when the knife I back away from him?
> Q: You saw the knife fall to the ground?
> A: Saw the knife fall to the ground and when he fell, I backed away from him.

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 10

(*Id.* at 39.)  Prince stated that he initially did not see a wound on his brother's body, but then observed Periera's body contort, and saw blood.

During cross-examination, Prince was questioned about whether he had stabbed Nonceba previously:

> Q. So, Mr. Prince, you were waiting for Mommy to come save you, weren't you?
> A. No.
> Q. Because in every time you get pushed in some mess, Mommy takes care of it, doesn't she? Yes or no?
> A. My mother love all her children.
> Q. Yes or no?
> A. My mother don't take care of my trouble.
> Q. Just like when you stabbed Nonceba in the leg, she took care of that?
> A. I never stabbed Cebe in his leg.
> Q. She sat you down and told you--
>
> ATTORNEY BETHEL: We have a jury verdict on the record.
> THE COURT: Overruled.
> Q. -- what story you were supposed to use, correct, Mr. Prince?
> A. That is false.
> Q. And then she threatened Nonceba that if he testified against you that he wasn't coming back in her house?
> A. That is false.

(*Id.* at 138-39.)

On rebuttal Nonceba was asked about the July stabbing and testified over the objection of Prince:

> Q: ... [D]id you sustain an injury in July 2000 to your leg, in July?
>
> A: Yes.
>
> ATTORNEY BETHEL: I believe it's been asked and answered before. This is rebuttal.
>
>     THE COURT: Overruled.
>
> Q: What part of your body?
>
> A: On my leg.
>
> Q: And how was the injury sustained? What caused the injury?
>
> A: I got into a fight.
>
> Q: What caused the injury? What instrument caused the injury?
>
> A: I got stab in the leg.
>
> Q: Who did it?
>
> A: My brother.
>
> Q: Which one?
>
> A: Glenford.

(*Id.* at 294-95.)

Federal Rule of Evidence 404(b) ("Rule 404(b)") provides that:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

Fed. R. Evid. 404(b). Rule 404(b) has been described as "a rule

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 12

of inclusion rather than exclusion." *United States v. McClain*, 313 Fed. Appx. 552, 555 (3d Cir. 2009)(unreported). "The Supreme Court gives four guidelines on the admissibility of prior bad act evidence: (1) the evidence must have a proper purpose under 404(b); (2) it must be relevant under 402; (3) its probative value must outweigh its prejudicial effect under Rule 403 and the court must charge the jury to consider the evidence only for the limited purpose for which it was admitted." *United States v. Sampson*, 980 F.2d 883, 884 (3d Cir. 1992)(citing *Huddleston v. United States*, 485 U.S. 681, 691-92 (1988)).[2]

In *United States v. Haukaas*, 172 F.3d 542, 544 (8th Cir. 1999), after a night of drinking, the defendant, Haukaas, stabbed two of his companions. He was tried and convicted of one count of assault with a dangerous weapon, two counts of assault resulting in serious bodily injury, and one count of simple assault. At trial, the government presented evidence of an altercation between the defendant and his girlfriend that had taken place two years prior. The defendant's girlfriend testified that the defendant had held a knife to her throat and threatened to kill her.

Addressing whether the testimony about a prior incident

---

[2] Here, the Court notes that the appellant failed to direct the Court to evidence in the record of a request for notice from the Government as to 404(b) evidence.

involving the defendant brandishing a knife was proper 404(b) evidence, the court noted that:

> During the investigation, Haukaas told an FBI agent that the stabbing was an accident. Haukaas then testified at trial that he was holding the knife stationary when the victims thrust themselves on the blade. He later claimed that he acted in self-defense. Thus, the government was entitled to introduce the Rule 404(b) evidence to show an absence of mistake or accident and to rebut the claim of self defense.

United States v. Haukaas, 172 F.3d 542, 544 (8th Cir. 1999)(per curiam).

Evidence of prior bad acts is also admissible to demonstrate that a defendant did not unwittingly commit a crime, but possessed the requisite knowledge. See, e.g., United States v. Stanley, 405 Fed. Appx. 662, 664 (3d Cir. 2010)(unreported)(holding that evidence that defendant had told government agent that "he's done this before for other individuals," was admissible under 404(b) to prove knowledge); United States v. Andujar, 209 Fed. Appx. 162 (3d Cir. 2006)(unreported)(finding that evidence of prior "bad acts" with respect to defendant's tax filings was admissible to establish wilfulness on charges of failure to file tax returns).

As in Haukaas, Nonceba's testimony about the prior stabbing was used to rebut Prince's account that the stabbing was accidental. Additionally, it was relevant in establishing Prince's criminal intent. The Court thus concludes that the

evidence related to the prior stabbing was admissible under 404(b). Our inquiry is not yet complete, however.

Where evidence is admissible under 404(b), a trial court must weigh the evidence in accordance with the balancing test provided in Fed. R. Evid. 403. *Sampson*, 980 F.2d at 889. The Court must consider whether the probative value of such evidence was substantially outweighed by its potential for unfair prejudice. *See* Fed. R. Evid. 403; *Huddleston v. United States*, 485 U.S. 681, 691 (1988). The record does not reflect a Rule 403 balancing. Where the trial court does not expressly articulate its Rule 403 balancing, we "either . . . decide the trial court implicitly performed the required balance; or, if we decide the trial court did not, we undertake to perform the balance ourselves." *Glass v. Phila. Elec. Co.*, 34 F.3d 188, 192 (3d Cir. 1994)(internal quotations and citation omitted). We will perform our own balancing.

The evidence of the prior stabbing bears on the absence of mistake or accident. As it goes to a key issue -- whether the stabbing of Pereira was accidental-- its probative value is significant. *See United States v. Crawford*, 376 Fed. Appx. 185 (3d Cir. 2010)(unreported)(observing that "[t]he need for the evidence depends mainly on its relative importance and centrality to the issues of the case and the availability of other evidence

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 15

to establish the facts sought to be proven"); *see also United States v. McClain*, 313 Fed. Appx. 552, 556 (3d Cir. 2009)(unreported)(finding probative evidence of defendant's prior crack cocaine and cocaine crimes, where government needed to establish knowledge and rebut a defense of "innocent or mistaken association with the drugs" in drug prosecution). In assessing the danger of unfair prejudice, "the focus must be on unfairness in the sense that the proponent would secure an advantage that results from the likelihood the evidence would persuade by illegitimate means." *United States v. Blyden*, 964 F.2d 1375, 1379 (3d Cir. 1993). Although there is some risk that the evidence would allow the jury to infer that the defendant relied on a knife as his trump card in any fraternal argument, it does not rise to the level of suggesting "guilt by reputation." *Gov't of the V.I. v. Toto*, 529 F.2d 278, 284 (3d Cir. 1976). On balance, we do not find that the prejudicial character of the evidence of the prior stabbing outweighed its probative value.

Notwithstanding that determination, the trial court is typically required to instruct the jury regarding the limited purpose of weighing such evidence. *United States v. Sampson*, 980 F.2d at 884. Here, the trial court charged the jury as to the limited purpose of the prior stabbing following its first mention during Meyer's testimony. The trial court did not reissue that

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 16

instruction at the time Nonceba testified about the stabbing. The defendant failed to request such an instruction with respect to Nonceba's testimony. Though in the norm, a limiting instruction should be rendered when 404(b) evidence is admitted, the Court finds no plain error with the failure to give such an instruction, where the defendant failed to request that the limited purpose instruction be reiterated as to Nonceba's testimony about the prior stabbing. *See United States v. Simmons*, 679 F.2d 1042, 1052 (3d Cir. 1982)(finding no plain error were defendant failed to request limiting instruction); *Gov't of the V.I. v. Roldan*, 612 F.2d 775, 781 (3d Cir. 1979)(determining there was no plain error where defense counsel "never submitted oral or written request" for limiting instruction, and "affirmatively stated that he had agreed with the court's instructions"); *accord United States v. Martinez-Rosas*, 215 Fed. Appx. 381, 383 (5th Cir. 2007)(unreported)(noting that where defendant failed to seek a specific limiting instruction, instruction that the defendant was "not on trial for any act, conduct or offense not alleged in the indictment" as to 404(b) evidence was not plain error); *United States v. Drebin*, 557 F.2d 1316, 1326 (9th Cir. 1977)(finding that failure to give a limiting instruction as to 404(b) evidence, where defendant failed to request, was not plain error).

Case: 3:05-cr-00037-CRA   Document #: 46   Filed: 07/13/11   Page 17 of 19

*Prince v. People of the Virgin Islands*
Crim. App. No. 2005-037
Memorandum Opinion
Page 17

Prince next argues that the trial court abused its discretion in admitting the testimony of Nonceba because Nonceba had perjured himself in a prior trial and then, the defense argues, "perjured himself again by misleading the Court as to his not being willing to testify against his brother in this case." (Appellant's Br. 11.) On cross-examination, Prince's counsel had the opportunity to challenge Nonceba's credibility. He made plain that Nonceba had previously offered differing testimony about the July 2000 stabbing incident. Furthermore, Nonceba was questioned about whether his testimony at trial was an attempt to escape prosecution for his perjury at the July 2004 trial.

> Q: Were you advised that you can go to jail for perjury?
> A: What?
> Q: Were you advised-- did anybody from the Attorney General's office tell you that you could go to jail for perjury.
> A: Look listen. I didn't care.
>
> . . . .
>
> Q: Okay. And so, has the Government promised you that you are not going to be charged with perjury?
> A: No , they didn't promise me nothing.
> Q: So, you're expecting to be charged with perjury?
> A: Listen, I'm expecting for justice to prevail. You don't understand that.
> Q: And so you are expecting to be charged with perjury?
> A: If I get charged with perjury, God forbid. I just want everything to be clear.
> Q: God forbid, or oh, God, you hope you're charged with perjury?

(Appellant's App. at 94-96.)

It is the function of the jury and not the judge to

determine the credibility of a witness. *See United States v. Haut*, 107 F.3d 213, 220 (3d Cir. 1997)(stating "[i]t is a basic tenet of the jury system that it is improper for a district court to 'substitute its judgment of . . . the credibility of the witnesses for that of the jury'"); *United States v. Rockwell*, 781 F.2d 985, 990 (3d Cir. 1986)("The law will not countenance usurpation by the court of the function of the jury to . . . assess the credibility of the witnesses."). The Court of Appeals for the Third Circuit has concluded that "[e]ven a convicted perjurer . . . may testify competently,"[3] and committed the determination of the credibility of such testifying witness to the jury. *United States v. Margolis*, 138 F.2d 1002, 1004 (3d Cir. 1943). As such, the trial court did not err in allowing the jury to hear his testimony and perform its role in adjudging Nonceba's credibility.

### V. CONCLUSION

For the foregoing reasons, the judgment of the Superior

---

[3] The Court notes the Third Circuit's advisement that when an admitted perjurer offers testimony, "[t]he court must charge that the testimony of such witness must be scrutinized with care." *Margolis*, 138 F.2d at 1004. Prince's argument on appeal is aimed at the admission of Nonceba's testimony. Prince has not argued that the trial court erred in failing to give an instruction as to considering the testimony of a perjurer. As Prince did not raise the issue of a perjurious witness instruction in his brief, the Court will not consider it here. *See United States v. Guibilo*, 336 Fed. Appx. 126, 128 (3d Cir. 2009)(unreported)(determining that when "an appellant fails to raise an issue in an appellate brief . . . it is deemed waived").

Court will be affirmed. An appropriate order follows.